Mary P. SWEARINGEN and Joshua Ogden, individually and on behalf of all others similarly situated, Plaintiffs,

v.

YUCATAN FOODS, L.P., Defendant.

No. C 13–3544 RS

United States District Court,
N.D. California,
San Jose Division.

Filed February 7, 2014

Ben F. Pierce Gore, Pratt & Associates, San Jose, CA, David P. Wilson, Jane S. Leger, Provost Umphrey Law Firm, Beaumont, TX, W. Michael Hamilton, Provost Umphrey Law Firm, Nashville, TN, for Plaintiffs.

Faryan Andrew Afifi, Afifi Law Group, Los Angeles, CA, for Defendant.

### ORDER DENYING MOTION TO DISMISS

RICHARD SEEBORG, UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This putative class action complaint challenges use of the term "evaporated cane juice" by Yucatan Foods, L.P. ("Yucatan") on the labels of several of its products, all of which are alleged to carry identically misleading labels in violation of California's Sherman Law and Unfair Competition Law. Yucatan moves to dismiss on the grounds that (1) plaintiffs cannot plead federal jurisdiction based on class action status; (2) plaintiffs' claims are preempted by federal law; (3) the subject matter falls within the primary jurisdiction of the Food and Drug Administration ("FDA"); (4) plaintiffs lack standing to sue; and (5) plaintiffs fail to state a plausible claim under the UCL. For the reasons explained below, Yucatan's motion to dismiss is denied.

### II. BACKGROUND

Plaintiffs allege Yucatan has sold various misbranded products in violation of California's Sherman Food, Drug, and Cosmetics Law, Cal. Health & Safety Code

§§ 109875, *et seq.* ("Sherman Law"), which incorporates the requirements of the federal Food, Drug and Cosmetics Act ("FDCA").[1] They advance a claim for relief under the Unfair Competition Law, Cal. Bus. & Prof.Code §§ 17200, *et seq.* ("UCL"). During the putative class period of July 31, 2009 to the present, plaintiffs purchased three of these products in San Francisco: Authentic Guacamole, Spicy Guacamole and Ranch Guacamole. Plaintiffs seek to represent a class of consumers in the United States who purchased these and other products carrying identical references to "evaporated cane juice" on their labels during the class period.[2] According to plaintiffs, the purchased products and class products alike are misbranded in the same way and are sold in violation of the Sherman Law because they are improperly labeled with the term "evaporated cane juice," instead of describing the ingredient by its proper name, "sugar" or "dried cane syrup." Plaintiffs allege they paid a "premium price" for these products "that fail to comply with mandatory labeling requirements and standards established by law such that the products are misbranded and rendered unfit for sale." (Compl.¶ 30.) According to plaintiffs, "the products are worthless due to their illegality and thus the unjustified premium paid for these products equaled their purchase price." (*Id.*)

The Sherman Law makes it unlawful to sell or offer for sale any food that is "misbranded," § 110760, a term defined solely in reference to the federal regulations: "Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in [21 U.S.C. Sec. 343(q)] and the regulations adopted pursuant thereto." § 110665. The Sherman Law further provides, "Any food fabricated from two or more ingredients is misbranded unless it bears a label clearly stating the common or usual name of each ingredient ...." § 110725(a). These two sections mirror the federal provision that a food is misbranded "[u]nless its label bears (1) the common or usual name of the food, if any there be, and (2) in case it is fabricated from two or more ingredients, the common or usual name of each such ingredient...." 21 U.S.C. § 343(i).

Section 110725 instructs the state department to "take into consideration" the current federal regulations in adopting any state regulations pursuant to that section, but it is not limited thereto. § 110725(c). Nevertheless, plaintiffs do not cite to any independent state labeling regulations to allege that Yucatan's use of the term "evaporated cane juice" is "unlawful" to support their UCL claim. Instead, plaintiffs' claim relies solely on the federal regulations issued pursuant to the Nutrition Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. § 343–1. Plaintiffs point to 21 C.F.R. §§ 101.3, (prohibiting manufacturers from referring to foods by anything other than their common and usual names), 102.5 (same), and § 101.4 (prohibiting manufacturers from referring to ingredients by anything other than their common and usual names) to define what they allege is "unlawful" labeling activity

---

**1.** The Nutrition Labeling and Education Act of 1990 ("NLEA"), Pub.L. No. 101–535, amended the FDCA to set forth "uniform national standards for the nutritional claims and the required nutrient information displayed on food labels." H.R.Rep. No. 101538, at *13 (1990), reprinted in 1990 U.S.C.C.A.N. 3336, 3342. Any reference to the FDCA in this order includes the NLEA amendments.

**2.** *Plaintiff alleges defendant sells a number of products with identical ECJ labels, including Authentic Guacamole, Mild Guacamole, Spicy Guacamole, Ranch Guacamole, Hummus Guacamole, and 2 oz. Singles Guacamole and the Guacamole Twinpack, all sold under the Yucatan Brand.*

by Yucatan. In particular, plaintiffs cite the federal regulation governing the term "sugar": "For purposes of ingredient labeling, the term sugar shall refer to sucrose, which is obtained from sugar cane or sugar beets...." 21 C.F.R. § 101.4(b)(20). In contrast, "juice" is defined as "the aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one or more fruits or vegetables, or any concentrates of such liquid or puree." 21 CFR 120.1(a). Finally, the term "cane sirup" (or "cane syrup") [3] is defined as "the liquid food derived by concentration and heat treatment of the juice of sugar cane." 21 C.F.R. § 168.130(a).

Although the FDA regulations do not specifically address the term "evaporated cane juice," the agency did publish draft guidance in 2009, observing:

> Over the past few years the term "evaporated cane juice" has started to appear as an ingredient on food labels, most commonly to declare the presence of sweeteners derived from sugar cane syrup. However, FDA's current policy is that sweeteners derived from sugar cane syrup should not be declared as 'evaporated cane juice' because that term falsely suggests that the sweeteners are juice.

FDA, Draft Guidance for Industry, 2009 WL 3288507, at *1 (Oct. 1, 2005) ("2009 Draft Guidance"). The 2009 Draft Guidance concludes:

> The intent of this draft guidance is to advise the regulated industry of FDA's view that the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including dried cane syrup. Because cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or

usual name for the solid or dried form of cane syrup is "dried cane syrup."

> Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR 102.5.

2009 WL 3288507, *2–3. The FDA has not issued final guidance on this point, but it has issued several warning letters to producers cautioning against the use of the term "evaporated cane juice." (See, e.g., Plaintiff's RJN, Exh. C–F.) Some of these warning letters were issued after the draft guidance was published. (See, e.g., Plaintiff's RJN, Exh. E, F.)

### III. LEGAL STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). While "detailed factual allegations are not required," a complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus.*

---

**3.** "Alternatively, the word 'sirup' may be spelled 'syrup.'" 21 C.F.R. § 168.130(c).

*v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995). Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 ("[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements," are not taken as true).

## IV. DISCUSSION

### A. *Federal Jurisdiction*

■ As an initial matter, Yucatan argues plaintiffs fail to plead a claim invoking federal jurisdiction. Plaintiffs assert federal jurisdiction pursuant to the Class Action Fairness Act (CAFA), which vests the district courts with jurisdiction over class actions in which the amount in controversy exceeds $5 million so long as there is minimal diversity between the parties. 28 U.S.C. § 1332(d)(2). Nevertheless, Yucatan argues the so-called "home state" exception should apply, under which the court "shall" decline jurisdiction when both the primary defendants and two thirds of the proposed plaintiff class members are citizens of the forum state. 28 U.S.C. § 1332(d)(4).

■ Ordinarily, the party seeking to invoke federal diversity jurisdiction must bear the burden of establishing that the court may properly exercise such jurisdiction. *Kohler v. Inter–Tel Techs.,* 244 F.3d 1167, 1170 n. 3 (9th Cir.2001). However, the "home state" provision of subdivision (d)(4) is an exception to jurisdiction under CAFA and therefore not part of the prima facie case for establishing minimal diversity jurisdiction. *Serrano v. 180 Connect, Inc.,* 478 F.3d 1018, 1023 (9th Cir.2007). "[A]lthough the removing party bears the initial burden of establishing federal jurisdiction under § 1332(d)(2), once federal jurisdiction has been established under that provision, the objecting party bears the burden of proof as to the applicability of any express statutory exception under §§ 1332(d)(4)(A) and (B)." *Serrano,* 478 F.3d at 1024.

On its face, plaintiffs' complaint meets the jurisdictional requirements of § 1332(d)(2). Defendant is a Delaware corporation with its headquarters in Los Angeles, California. Plaintiffs assert claims on behalf of over 100 members of a proposed class of consumers throughout the United States, including class members from states other than Delaware or California and an amount in controversy in excess of $5 million in the aggregate. These assertions, unchallenged by Yucatan, are sufficient to establish a prima facie case for minimal diversity jurisdiction under CAFA.

■ The burden then shifts to Yucatan, which argues the "home state" exception applies despite plaintiffs' allegations regarding a nationwide class of consumers. Yucatan points to a California appellate decision reversing the trial court's certification of a nationwide UCL consumer class on the ground that the UCL was not intended to regulate conduct unconnected to California. *Norwest Mortgage, Inc. v. Su-*

perior Court, 72 Cal.App.4th 214, 222–23, 85 Cal.Rptr.2d 18 (1999); *but see Nat'l Notary Ass'n v. U.S. Notary*, D038278, 2002 WL 1265555, *4 (Cal.Ct.App. June 7, 2002) (distinguishing *Norwest* on the grounds that the class in *National Notary* sought injunctive, not monetary, relief to enforce compliance by the resident defendant for conduct directed from its California headquarters). Whatever the merits of this argument as to the ultimate propriety of a nationwide class, resolution of this question will require "detailed choice-of-law analysis" not appropriate at the pleadings stage. *Clancy v. Bromley Tea Co.*, No. 12–cv–03003, 2013 WL 4081632, *7 (N.D.Cal. Aug. 9, 2013) (denying judgment on the pleadings). "[S]uch a fact-heavy inquiry should occur during the class certification stage, after discovery." *Id.* Recent cases from this district have rejected such arguments at the pleadings stage and allowed the complaint to proceed based on CAFA jurisdiction. *See, e.g., Werdebaugh v. Blue Diamond Growers*, 2013 WL 5487236 (N.D.Cal. Oct. 2, 2013) (denying motion to strike nationwide class claims).

## B. *Preemption*

 Pursuant to the Supremacy Clause, federal law preempts state law when: "(1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir.2010). There is a presumption against preemption "unless that [is] the clear and manifest purpose of Congress," *United States v. Locke*, 529 U.S. 89, 107, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000). This presumption is heightened where "federal law is said to bar state action in fields of traditional state regulation." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). In light of the historical "primacy of state regulation of matters of health and safety," *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996), courts can assume that "state and local regulation related to [such] matters ... can normally coexist with federal regulations." *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 718, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). Where Congress does provide for express preemption, the presumption against preemption requires courts to read the clause narrowly. *Medtronic*, 518 U.S. at 485, 116 S.Ct. 2240.

 Yucatan first argues the FDCA explicitly preempts plaintiffs' UCL claim. The NLEA states that it "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [21 U.S.C. § 343–1(a) ] of the ·[FDCA]." Pub.L. No. 101–535, § 6(c)(1). It does contain two express preemption provisions relating to sections 343(q) and (r). Section 343–1(a)(4) expressly preempts any state or local "requirement for nutrition labeling of food that is not identical to the requirement of section 343(q)." Section 343–1(a)(5), in turn, preempts state or local governments from imposing any requirement on nutrient content claims made by a food purveyor "in the label or labeling of food that is not identical to the requirement of section 343(r)." Where a requirement imposed by state law effectively parallels or mirrors the relevant sections of the NLEA, courts have repeatedly refused to find preemption. *See, e.g., N.Y. State Rest. Ass'n v. N.Y. Bd. of Health*, 556 F.3d 114, 123 (2d Cir.2009); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 370 (N.D.Cal.2010). This means that plaintiffs'

claims need not fail on preemption grounds if the requirements they seek to impose are either identical to those imposed by the FDCA and the NLEA amendments or do not involve claims or labeling information of the sort described in section 343(r)(1) or 343(q).

In the more common nutrient content claim under the UCL, plaintiffs allege some aspect of the defendant's label is misleading or deceptive. Here, plaintiffs limit their claim to the "unlawful" prong of the UCL in an effort to simplify the case "by dispensing with questions of 'reliance' or the 'reasonable consumer standard.'" Plaintiffs assert a theory of liability that rests solely on defendant's alleged failure to comply with the nutritional labeling requirements of the FDCA as incorporated into California state law by the state's Sherman Law. Because the claim rises or falls on defendant's compliance with the FDCA, the express preemption clause of section 343-1 does not apply.

■ In the alternative, Yucatan argues the FDCA impliedly preempts any private action seeking to enforce food labeling regulations. While it is true there is no private enforcement under the NLEA, "[n]umerous courts in this District have rejected the same preemption arguments in similar food misbranding cases where the requirements under the Sherman Law (asserted here through the UCL) are identical to the requirements imposed under the FDCA." *Ang v. Bimbo Bakeries USA, Inc.*, No. 13–cv–01196, 2013 WL 5407039, *11 (N.D.Cal. Sept. 25, 2013). Although the claims in *Ang* were not limited, as here, to the "unlawful" prong of the UCL, the analysis is equally applicable here to plaintiffs' more narrow claim.

## C. *Primary Jurisdiction*

■ The primary jurisdiction doctrine applies when there is: "(1) [a] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Clark v. Time Warner*, 523 F.3d 1110, 1115 (9th Cir.2008). "In practice, this means that the court either stays proceedings or dismisses the case without prejudice, so that the parties may seek an administrative ruling." *Id.* at 1115. The doctrine of primary jurisdiction may only be properly invoked "in a limited set of circumstances"; it "is not designed to 'secure expert advice' from agencies every time a court is presented with an issue conceivably within the agency's ambit." *Id.* at 1114 (internal quotations omitted). "It is to be used only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Id.* (internal quotations omitted).

■ Yucatan argues that primary jurisdiction should apply because the FDA does not currently have a final position on the issue of "evaporated cane juice" labeling and is in the process of developing one. The FDA's 2009 Draft Guidance on the use of the term "evaporated cane juice" specified the document was "nonbinding," "do[es] not establish legally enforceable responsibilities," and was circulated for the purpose of soliciting comments only. 2009 WL 3288507, at *1; *see also* 74 Fed.Reg. 51610–01 (Oct. 7, 2009) (explaining that draft guidance documents do not "create or confer any rights for or on any person and does not operate to bind FDA or the public"). Courts in this district have divided on whether the lack of formal guidance concerning "evaporated can juice" warrants application of primary jurisdiction. *Compare Samat v. Proctor & Gamble Co.*,

12–CV–01891, 2013 WL 3124647, *8 (June 18, 2013) (finding existing guidance requiring use of "[t]he common or usual name of a food" sufficient) *with Hood v. Wholesoy & Co,* No. 12–cv–5550, 2013 WL 3553979, *5 (July 12, 2013) (finding the FDA's position unsettled and "[t]hus, determination of Plaintiff's claim would require the Court to decide an issue committed to the FDA's expertise without a clear indication of how FDA would view the issue").

Although the FDA has not issued any final guidance directly addressing the term "evaporated cane juice," it has provided guidance in the form of regulations concerning the terms "sugar," "juice," and "cane syrup" such that the issue presented here is hardly one of "first impression" necessitating its commitment to the agency. The fact that the FDA has not yet finalized the draft guidance issued more than four years ago, and that it continues to issue warning letters consistent with that position, further suggests the agency does not view the issue as unsettled.[4] In sum, the question presented here does not require dismissing or staying this litigation pending final agency resolution of this question.

D. *Standing*

■■■■ Yucatan next argues plaintiffs lack standing to assert a claim for relief under the UCL. As the party seeking to invoke the Court's jurisdiction, plaintiffs bear the burden of establishing constitutional standing and therefore subject matter jurisdiction over their claim. *See Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). "For purposes of ruling on a motion to dismiss for want of standing, both the trial and re-

viewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

■■■ To satisfy the United States Constitution's standing requirement, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Here, plaintiffs allege putative class members paid a premium price for Yucatan's products labeled as containing "evaporated cane juice" and were thereby damaged "in that they purchased misbranded and worthless products that were illegal to sell or possess based on Defendant's illegal labeling of the products." (Compl.¶¶ 31, 32.) This is enough at least as to those products actually purchased by plaintiffs. Yucatan's counter-arguments regarding the nature and degree of plaintiffs' injury, and whether their labels were accurate or not, go to the merits of plaintiffs' claim, not standing.

As to those class products which plaintiffs themselves did not purchase, that issue was considered at length in a recent case from this district. *See Clancy,* 2013 WL 4081632, *3–6. The Supreme Court has noted "there is tension in [its] prior

---

**4.** According to the FDA July 2012 Regulatory Procedures Manual, "The agency position is that Warning Letters are issued only for viola-

tions of regulatory significance." FDA, Regulatory Procedures Manual, 4–1—Warning Letters (July 2012).

cases" regarding whether differences among class members "is a matter of Article III standing at all or whether it goes to the propriety of class certification pursuant to Federal Rule of Civil Procedure 23(a)." *Gratz v. Bollinger,* 539 U.S. 244, 263 & n. 15, 123 S.Ct. 2411, 156 L.Ed.2d 257 (2003). Defendants do not cite any Ninth Circuit decisions directly addressing this question.

As *Clancy* recounts, decisions from within this District have split into three groups: (1) a strict position in which claims relating to products not purchased must be dismissed for lack of standing; (2) a middle ground in which the inquiry is whether there is sufficient similarity between the products which were purchased and those which were not; and (3) a third group finding standing to be satisfied so long as the named plaintiff has individual standing to bring claims regarding the purchased products and reserving the question of whether a proposed class can bring claims related to other products until the class certification stage. *Clancy,* at *4. *Clancy* adopts the third position.

It is not necessary here to parse the distinction between the second and third approach outlined in *Clancy* because plaintiffs challenge only the propriety of the term "evaporated cane juice," a term indisputably present in the ingredient list of each of the class products. Plaintiffs' claim rises or falls on whether the challenged term violates the FDA's food labeling regulations and therefore renders the class products "unlawful" under the UCL.

Nevertheless, Yucatan argues for the most restrictive view of standing, for three reasons:

First, if there are regionality questions by products being purchased, that will be a factor determining whether a class action is appropriate at all.... Secondly, expanding class action cases to include numerous products not purchased by Plaintiffs would artificially expand the scope of a case, which will not be redressed until much later at the class certification stage, something that is not always financially viable for small companies such as Yucatan Foods. Third, complying with this requirement is hardly difficult, since plaintiffs that have in fact purchased the other products should not be hard to identify, if indeed the heart of the case has merit.

(Reply at 9.) None of these arguments rebut plaintiffs' satisfaction of the case and controversy requirement of Article III nor implicate the traditional prudential concerns of standing. The first argument suggests plaintiffs may have a more difficult path to class certification—a consideration best left to the certification stage. The second concern, though well-taken, can be addressed through careful case management and the supervision of discovery. The third suggests that the issue is not one that would otherwise evade review, but that is no reason to foreclose claims asserted on behalf of other purported class members at this juncture.

As in *Clancy,* it is not necessary to determine, at this point, that plaintiffs cannot represent a class who purchased any different products than did the plaintiffs. *Clancy,* *5. Importantly, as *Clancy* observed, plaintiffs here do not claim themselves to have standing to assert claims related to products they did not purchase, only that they may be potential representatives of a class of people who have such standing. *Id.* *6. Whether such a class may be certified, and whether these plaintiffs are determined to be adequate representatives, are questions for another day. On the facts as alleged in this case, the course adopted by *Clancy* seems appropriate, allowing plaintiffs to plead claims re-

garding unpurchased products on behalf of purported class members.

### E. *Plausibility*

■ Plaintiffs rest their claim on the "unlawful" prong of the UCL, which defines unfair competition as "any unlawful, unfair or fraudulent business act or practice...." Cal. Bus. & Prof. Code § 17200. As explained by the state appellate court, "[T]here are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent." *In re Tobacco II Cases,* 46 Cal.4th 298, 311, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009). "By proscribing 'any unlawful' business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal.4th 163, 180, 83 Cal. Rptr.2d 548, 973 P.2d 527 (1999) (internal quotations and citations omitted).

■ Yucatan argues plaintiffs fail to state a plausible claim for relief because they fail to plead deception of the reasonable consumer or liability under the UCL. However, a plaintiff proceeding under the "unlawful" prong need only plead facts to show it is plausible the defendant broke the law because the legislature has already determined the conduct to be "unfair" by virtue of legislative prohibition. *See, e.g., Morgan v. Wallaby,* No. 13–296, 2013 WL 5514563, *8–9 (N.D.Cal. Oct. 4, 2013) (denying motion to dismiss as to unlawful prong of the UCL but granting as to unfair prong); *Gitson v. Trader Joe's Co.,* No. 13–1333, 2013 WL 5513711, *8–10 (N.D.Cal. Oct. 4, 2013) (same). Plaintiffs, therefore, need not allege deception to proceed with this claim.

Because plaintiffs' claim does not turn on a judicial finding of whether the term "evaporated cane juice" is misleading, but only on whether it is contrary to federal law and regulations, Yucatan's argument that any possible deception is mitigated by the presence of "sugar" on the products' nutrition facts panels is beside the point on this motion. Yucatan further argues plaintiffs fail to plead liability under the UCL because the complaint offers no "allegations to suggest that ECJ should be equated to plain 'sugar' or that ECJ's use in the marketplace for roughly two decades has not established 'ECJ' as a common or usual name." Plaintiffs' allegations that "evaporated cane juice" is not a juice as defined by federal regulations nor the common or usual name for sugar are sufficient to state a plausible claim that Yucatan's use of the term "evaporated cane juice" violates the federal regulations adopted by California pursuant to the Sherman Law.

■ To state a claim under the UCL, a plaintiff must also allege that he or she "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof.Code § 17204. Although Yucatan does not explicitly address this requirement, its arguments concerning standing could fairly be read to apply to this requirement. As above, plaintiffs' allegations that they paid a premium price for the products and that Yucatan's unlawful use of the term "evaporated cane juice" rendered them "worthless" is sufficient to state the requisite injury in fact and monetary loss required by § 17204. Yucatan's motion to dismiss for failure to state a plausible claim is denied.

## VI. CONCLUSION

The motion to dismiss is denied.

IT IS SO ORDERED.